# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

TIDEWATER MARINA HOLDING, L.C.,

    Debtor.

Case No. 09-10480-RGM
(Jointly Administered with
Case No. 09-10481-RGM)
(Chapter 11)

## MEMORANDUM OPINION

This case is before the court on the debtor's objection to the proof of claim of Robert L. and Lindalee B. Fitton (Proof of Claim No. 6-1), the Fittons' motion for summary judgment (Docket Entry 295); and the debtor's opposition (Docket Entry 319).

The debtor entered into a contract with Equity Homes, LLC, the Fittons' predecessors, to sell to Equity Homes about 340-acres of land including a marina. The debtor agreed to complete an expansion of the marina before closing and Equity Homes agreed to loan the debtor $5,575,000 for the construction costs. Both parties now assert that the other breached the contract, the Fittons asserting that the debtor did not complete the marina improvements before the expiration of the Army Corps of Engineers permit and the debtor that Equity Homes failed, among other matters, to timely make an advanced payment. The motion for summary judgment raises several issues.

The primary issue as to the breach of contract is whether the marina was completed prior to the expiration of the Corps of Engineers permit. The Fittons assert that it was not. The contract provides:

> Notwithstanding any other provision of this Agreement, Seller shall be responsible for the continued existence and viability of the Army Corps of Engineers' permit currently in place with respect to the Marina Expansion Project . . . In the

1

> event that: (i) such permit shall at any time lapse, or no longer be effective, and (ii) the Marina Expansion Project shall not then be fully completed, inspected, and finally approved, Purchaser may terminate its purchase obligations hereunder and promptly receive a full refund of its Deposit; provided however, Seller shall remain fully liable for the indebtedness of the Marina Expansion Loan as provided in the loan documents therefore. The existence and availability of such permit or the completion of the work pursuant to such permit shall be a condition to Closing.

Real Estate Purchase Agreement, ¶3(d).

A condition of closing was:

> The Army Corps of Engineers Permit . . . shall be in full force and effect until the Marina Expansion Project has been competed and the Army Corps of Engineers Permit has been satisfied.

Real Estate Purchase Agreement, ¶7(v).

The Fittons state in their Motion for Summary Judgment that:

> 9. Both the Purchase Contract and the Development Loan Agreement required that the marina project be completed and finally inspected by the US Army Corps of Engineers . . . by the time a permit issued by the Army Corps covering the marina project expired in late December, 2006. . . .
>
> 10. Equity never received from [the debtor] or from any other source any evidence that the marina project had been finally inspected and approved by the Army Corps before the Army Corps permit expired. . . .

Motion for Summary Judgment at ¶¶9-10.

Summary judgment is decided on the summary judgment record which consists of the pleadings, the discovery and disclosure materials on file, and applicable affidavits. The summary judgment record must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Bankr.Proc. 7056 and 9014(c) incorporating Fed.R.Civ.Proc. 56(c)(2). Pleadings alone may be sufficient if sufficient allegations are admitted.

Here, the debtor denied these allegations. Debtors' Opposition to Motion of Robert L. and Lindalee B. Fitton for Summary Judgment on Debtors' Objection to Claim at 4-5.

The Fittons do not rest solely on their allegations contained in their motion. They also included the declaration of Robert L. Fitton II, the son of Robert L. and Lindalee B. Fitton, and the president of Equity Homes. His declaration states:

> 9. Prior to February, 2007, Equity [Homes] approached [the debtor] about reducing the purchase price under the Purchase Contract because of deteriorating conditions in the real estate market.
>
> 10. On or about February 9, 2007, Equity [Homes] received a letter from [the debtor's] counsel declaring that Equity [Homes] was in default under the Purchase Contract for failing to make the "Advance Payment" called for in paragraph 2(g) of that contract. It was Equity [Home's] view, communicated to [the debtor] informally, but in an effort to be constructive, not formally, that [the debtor] was already in default under the Purchase Contract because, among other things, the Army Corps had not finally inspected and approved the marina improvements before the expiration of the army Corps permit applicable to the work.

Declaration of Robert L. Fitton II, at ¶¶9 - 10.

Neither the Fittons' allegation nor Mr. Fitton's declaration are sufficient to establish that the debtor was in default of paragraphs 3(d) and 7(v) of the contract. The motion states that Equity Homes did not ***"receive" "evidence"*** that the marina project had been finally inspected and approved before the permit expired. The declaration only states Equity Homes' ***"view"***. The contract does not require that Equity Homes receive evidence of completion of the marina, only that the permit not lapse before the marina was completed, inspected, and finally approved. In addition, the debtor filed a Declaration of Greg Gardy who was an estimator and contract administrator for the contractor who performed the work on the marina. He stated that the work required under the permit was completed

before the permit expired and set out the customary process followed by the Army Corps of Engineers with respect to completed work. Declaration of Greg Gardy at ¶¶4-6. (Docket Entry 322).

The court notes the debtor's admissions to two Requests for Admission by Raymond A. Yancey in a companion adversary proceeding brought by the debtors against the Fittons and other parties in which the debtor admitted that there had been no final inspection and the work had not been finally approved before the date required by the contract. The admissions only go to whether there was a final inspection or final approval, not the Corps of Engineers procedure, a matter that Mr. Gardy's declaration puts in contention.

The debtor's breach of the sales contract is a material fact and the summary judgment record shows that there is a genuine issue as to it.

The Fittons also argue that summary judgment should be granted as to the maximum amount of damages that may be recovered if they are found to have breached the contract. They argue that this is a breach of the contract matter and that damages are limited by the liquidated damages provision of the contract. Real Estate Purchase Agreement at ¶11(a). The debtor argues that the breach was a breach of good faith and that the liquidated damages clause does not limit damages arising from the bad faith conduct of Equity Homes. Virginia law is clear that in a contract case it does not matter whether the breach was made in good faith or in bad faith. The measure of damages is the same and a contractual liquidated damages clause controls. This issue is closely related to whether punitive damages may be awarded in a contract case. Virginia law precludes this. Only if there is a cause of action in tort separate from the contract may punitive damages be recovered. The question is the source of the duty that was breached, whether it arose from the contract or in tort. *Dunn Const. Co. v. Cloney,* 278 Va. 260 (2009); *Richmond Metro. Auth. v. McDevitt Street Bovis,*

*Inc.,* 256 Va. 553 (1998); *Kamlar Corp. v. Haley,* 224 Va. 699 (1983). Some of the debtor's allegations could make a part of a tort claim, but the objection sounds in contract and the contractual liquidated damages provision controls. If Equity Homes breached the contract, the debtor's damages are limited by the liquidated damages provision of the contract. But for the liquidated damages provision, the measure of contract damages would be the difference between the contract sales price and the sales price (or value) of the property after Equity Homes' breach. This could be substantial. Mr. Fitton states in his declaration that Equity Homes sought a price adjustment "because of deteriorating conditions in the real estate market." Declaration of Robert L. Fitton II at ¶9. The adjustment was in the range of $9 million. There being no genuine issue as to the applicability of the liquidated damages provisions of the contract, summary judgment will be granted as to the issue.

## Conclusion

The Fittons' motion for summary judgment will be granted in part and denied in part. It is granted as to liquidated damages and denied as to breach.

Alexandria, Virginia
January 3, 2011

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Stephen E. Leach
George R. Pitts
Joel S. Aronson
Jeffery T. Martin, Jr.

16529